Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE SAPROO,<br><br>                    Plaintiff,<br><br>                    vs.<br><br>MIROMATRIX MEDICAL INC., PAUL BUCKMAN, WILLIAM BURKE, JOHN ERB, PETER MAAG, JEFFREY ROSS, and LISA WIPPERMAN HEINE,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Christine Saproo ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.     Plaintiff brings this stockholder action against Miromatrix Medical Inc. ("Miromatrix" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act")

1

as a result of Defendants' efforts to sell the Company to United Therapeutics Corporation ("United Therapeutics") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an October 29, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, in exchange for each share of Miromatrix common stock owned, Miromatrix shareholders will receive $3.25 per share plus one contingent value right ("CVR") which represents the contractual right to receive a contingent payment of $1.75 in cash upon the achievement of a clinical development milestone related to Miromatrix's development-stage, fully-implantable manufactured kidney product known as mirokidney, per share of Miromatrix common stock.

3.     Thereafter, on November 13, 2023, Miromatrix filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Miromatrix shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial

projections for Miromatrix, provided by Miromatrix to the Company's financial advisor Piper Sandler & Co. ("Piper Sandler"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Piper Sandler and provided to the Company and the Board; and (d) potential conflicts of interest related to Craig-Hallum Capital Group LLC ("Craig-Hallum"), the Company's other financial advisor. Accordingly, this action seeks to enjoin the Proposed Transaction.

5. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

6. Plaintiff is a citizen of Texas and is a Miromatrix stockholder.

7. Defendant Miromatrix is incorporated in the State of Delaware, has its principal executive offices located at 6455 Flying Cloud Drive, Suite 107, Eden Prairie, Minnesota 55344 and its shares trade on the Nasdaq Capital Market under the ticker symbol "MIRO."

8. Defendant Paul Buckman ("Buckman") has been a Chair of the Board and a Director of the Company at all relevant times.

9. Defendant William Burke ("Burke") has been a Director of the Company at all relevant times.

10. Defendant John Erb ("Erb") has been a Director of the Company at all relevant times. In addition Vardeman serves as the Chair of the Company Board.

11. Defendant Peter Maag ("Maag") has been a director of the Company at all relevant times.

12. Defendant Jeffrey Ross ("Ross") has been Chief Executive Office ("CEO") and a Director of the Company at all relevant times.

3

13. Defendant Lisa Wipperman ("Wipperman") has been a director of the Company at all relevant times.

14. Defendants identified in ¶¶ 8-12 are collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

16. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

18.  Miromatrix is a life sciences company, develops a novel technology for bioengineering fully transplantable organs. The company's proprietary technology is a platform that uses a two-step method of decellularization and recellularization designed to remove the porcine cells from the organs obtained from pigs and replace them with unmodified human cells. It has collaborations with Baxter, CareDx, The Mayo Clinic, Mount Sinai Hospital, and The Texas Heart Institute. The company was formerly known as TayTech, Inc. Miromatrix Medical Inc. was incorporated in 2009 and is headquartered in Eden Prairie, Minnesota.

*The Proposed Transaction*

19.  On October 30, 2023, 2023, Miromatrix and Kontron issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> SILVER SPRING, Md., RESEARCH TRIANGLE PARK, N.C., and EDEN
> PRAIRIE, Minn., October 30, 2023 -- United Therapeutics Corporation (Nasdaq: UTHR) and Miromatrix Medical Inc. (Nasdaq: MIRO) announced today a definitive agreement for United Therapeutics to acquire Miromatrix.
>
> Miromatrix is a life sciences company focused on the development of bioengineered organs composed of human cells. United Therapeutics is a biotechnology company with six FDA-approved therapies to address rare, life-threatening conditions, and a pipeline that includes four ongoing registration-phase studies. The acquisition of Miromatrix will expand United Therapeutics' existing complementary platform of organ manufacturing programs, which include ex-vivo lung perfusion, xenotransplantation, 3-D bioprinting, and regenerative medicine approaches with the objective of creating an unlimited supply of tolerable, transplantable organs.
>
> "At United Therapeutics, we are determined to rectify the severe shortage of transplantable organs," said Martine Rothblatt, Ph.D., Chairperson and Chief Executive Officer of United Therapeutics. "We expect that Miromatrix will help us in this mission, bringing a number of new approaches, highly-skilled personnel, and state of the art facilities as additional shots on goal to complement our existing organ manufacturing programs."
>
> "United Therapeutics' dedication to solving the chronic shortage of transplantable organs is a vision we share at Miromatrix," said Jeff Ross, Ph.D., Chief Executive Officer of Miromatrix. "This transaction provides our shareholders

with a substantial premium and allows them to participate in the potential upside of our combination, while accelerating the development of our pipeline as we strive to make bioengineered organs a reality for the many patients in need."

Terms of the Agreement

United Therapeutics will commence a tender offer to acquire all outstanding shares of Miromatrix for a purchase price of $3.25 per share in cash at closing (an aggregate of approximately $91 million) and an additional $1.75 per share in cash upon the achievement of a clinical development milestone related to Miromatrix's development-stage, fully-implantable manufactured kidney product known as mirokidney™ by December 31, 2025.

This transaction is not subject to any financing condition and is expected to close in the fourth quarter of 2023, subject to customary closing conditions, including the tender of a majority of the outstanding shares of Miromatrix's common stock. Following the successful closing of the tender offer, United Therapeutics will acquire any shares of Miromatrix that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

The purchase price payable at closing represents a premium of approximately 170% to the 30-day volume-weighted average trading price of Miromatrix's common stock ending on October 27, 2023, the last trading day before the announcement of the transaction. Miromatrix's Board of Directors unanimously recommends that Miromatrix's stockholders tender their shares in the tender offer.

***The Materially Misleading and/or Incomplete Recommendation Statement***

20.     On November 13, 2023, the Miromatrix Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning Miromatrix's Financial Projections</u>*

21. The Recommendation Statement fails to provide material information concerning financial projections for Miromatrix provided by Miromatrix management and relied upon by Piper Sandler in its analyses.

22. Notably, in its fairness opinion, Piper Sandler indicates that it reviewed, "reviewed and analyzed certain information, including financial forecasts, relating to the business, earnings, cash flow, assets, liabilities and prospects of the Company that were publicly available, as well as those that were furnished to us by the Company."

23. The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Miromatrix management provided to the Board and Piper. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. With regard to the Preliminary Projections, the Recommendation Statement fails to disclose a summary of the Preliminary Projections, including any quantification of the changes made to the Preliminary Projections to arrive at the final projections relied upon by Piper Sandler in its opinion.

25. The Recommendation Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all sets of provided projections

26. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

27. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Piper Sandler's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Piper Sandler*

28. In the Recommendation Statement, Piper Sandler describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

29. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following: (a) the Company's risk-adjusted, after-tax, unlevered free cash flows ("UFCFs") over the period beginning in 2024 and ending in 2042; (b) the terminal year UFCF used to calculate the Company's terminal values; (c) the terminal values for the Company; and (d) the Company's fully-diluted outstanding shares.

30. With respect to the *Precedent Premiums Paid Analysis*, the Recommendation Statement fails to disclose the transactions analyzed and the respective premia.

31. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

32. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement

*Conflicts of Interest*

33. Recommendation Statement fails to disclose whether any of United Therapeutics' indications of interest mentioned management retention in the combined company following the Proposed Transaction.

34. The Recommendation Statement also fails to disclose material information regarding Craig-Hallum potential conflicts of interest. The Recommendation Statement fails to disclose any detail of the services previously provided to United Therapeutics, the Company or affiliates in the two-year period preceding the Proposed Transaction.

## FIRST COUNT

## Violations of Section 14(e) of the Exchange Act

## (Against All Defendants)

35. Plaintiff repeats all previous allegations as if set forth in full herein.

36. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

37. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

38. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

39. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

40. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

41. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to tender her shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

42. Plaintiff has no adequate remedy at law.

### SECOND COUNT

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**(Against all Defendants)**

43. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

44. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

45. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

46. SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

47. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

48. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to tender her shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

49. Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

50. Plaintiff repeats all previous allegations as if set forth in full herein.

51. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants

knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

52. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

53. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Miromatrix's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

54. The Individual Defendants acted as controlling persons of Miromatrix within the meaning of Section 20(a) of the Exchange Act. Because of their position with the Company, the Individual Defendants had the power and authority to cause Miromatrix to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Miromatrix and all of its

employees.  As alleged above, Miromatrix is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 28, 2023

**BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*